**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Shannon D.,

Plaintiff,

v.

Frank Bisignano, Commissioner of Social Security Administration,

Defendant.

No. 25-cv-1156 (DLM)

**ORDER**

In 2019, Plaintiff Shannon D. was assaulted in the line of duty while serving as a police officer. She has suffered from a number of debilitating impairments since that time, including vertigo and migraine headaches. Eventually, she sought Disability Insurance Benefits ("DIB"), with a disability onset date tracking when she was injured at work. The Commissioner of Social Security ("Commissioner") denied benefits after an Administrative Law Judge ("ALJ") concluded Plaintiff did not qualify as disabled under the Social Security Act.

On judicial review, Plaintiff asks this Court to reverse the Commissioner's denial-of-benefits decision and remand for further proceedings. Specifically, Plaintiff asserts the ALJ erred by failing to fully weigh the effect of her migraines on her ability to work, and by failing to consider whether her need for a service dog disqualified her from certain jobs. The matter is now fully submitted. (Docs. 12 (Plaintiff's Brief), 14 (Commissioner's Brief), 15 (Plaintiff's Reply).) For the reasons stated below, the Court reverses the

Commissioner's decision and remands this matter for further proceedings consistent with this Order.

## BACKGROUND

In June of 2023, Plaintiff Shannon D. applied for DIB, alleging disability beginning on September 1, 2019. (Tr.[1] at 18, 214-17.[2]) The Social Security Administration ("SSA") denied Plaintiff's claim initially and upon her request for reconsideration. (Tr. at 125-34 (initial denial), 136-43 (reconsideration).) Plaintiff then timely requested a hearing before an ALJ (Tr. at 144-45), and the ALJ held a hearing on June 13, 2024 (Tr. at 48-82). Plaintiff was represented by a non-attorney advocate, appeared at the hearing, and testified on her own behalf. (Tr. at 50-76.) A vocational expert also testified, opining that there were at least three representative jobs in the national economy that a person with ailments and limitations similar to Plaintiff (at least as described by the ALJ) could still perform. (Tr. at 77-81.) Upon questioning from Plaintiff's advocate, the vocational expert testified that there would be no jobs available if Plaintiff was forced to miss more than one day per month due to her migraines. (Tr. at 81.)

On September 3, 2024, the Commissioner sent a notice of unfavorable decision to Plaintiff. (Tr. at 15-17 (notice), 18-43 (decision).) In his decision, the ALJ recognized that Plaintiff suffered from several severe impairments, including attention deficit hyperactivity

[1] The Commissioner filed the consecutively paginated transcript of the administrative record on July 11, 2025. (Docs. 11 to 11-2.) For ease of reference, citations to the transcript will identify the page number listed on the lower right corner of the cited document.

[2] The parties and the ALJ all indicate Plaintiff's application date was June 2, 2023, but the application summary indicates the date was June 30, 2023. (Tr. at 214.)

disorder ("ADHD"), depressive disorder, headache disorder, hip degenerative disorder, lumbar degenerative disorder, fibromyalgia, and mild cognitive disorder/traumatic brain injury.[3] (Tr. at 21.) Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC")[4] to perform sedentary work[5] with the following additional limitations: no climbing of ladders, ropes, or scaffolds and only occasional climbing of stairs and ramps; never balancing, but could walk normally across level surfaces, stairs, or ramps; could occasionally stoop but never crawl; must be in a setting with moderate noise or quieter; needs to avoid atmospheric conditions that irritate the respiratory system, eyes, and skin; needs to avoid hazards like heights and dangerous machinery; has the ability to do detailed tasks but not complex or technical ones; can engage in only superficial interactions with coworkers and the public; and able to adapt to the stress and pressure of a limited detail work setting. (Tr. at 27.)

As for Plaintiff's headaches, the ALJ recognized that according to Plaintiff she had "chronic headaches most days that could turn into a migraine and completely shut her down as she needed to sleep in a blackened room." (Tr. at 28.) The ALJ discounted Plaintiff's

[3] Plaintiff alleged two additional impairments—hearing loss and right wrist pain—that the ALJ characterized as non-severe due to the lack of treatment and, for Plaintiff's wrist pain, its short duration. (Tr. at 22.)

[4] "RFC is defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007)) (cleaned up).

[5] By regulation, sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(c).

statements of impairment because he found them "not entirely consistent with the medical evidence and other evidence in the record." (Tr. At 28.) The ALJ then recounted some of Plaintiff's activities of daily living, which included chores, pet care, intermittent manual labor around the house, leisure activities, exercise, and travel. (Tr. at 28-29.) Likewise, the ALJ summarized a number of Plaintiff's medical records, all of which indicated that Plaintiff had chronic headaches which she attempted to treat in different ways, including pharmacologically, with Botox injections, and through physical therapy, from 2019 through 2024. (Tr. at 29-31.) Nonetheless, the ALJ concluded that Plaintiff's "actual course of treatment and activities of daily living did not support" an RFC restriction of being off-task or excessively absent due to headaches. (Tr. at 32.) The ALJ's decision contains no discussion of Plaintiff's service dog. (*See generally* Tr. at 18-43.)

Plaintiff claims the ALJ's formulation of the RFC was not supported by substantial evidence in two respects: (1) it did not properly account for the effect Plaintiff's debilitating migraines would have on her ability to work; and (2) it did not address her need for a service dog. The Court addresses each issue in turn.

**ANALYSIS**

This Court reviews the ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision was infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1138, 1154 (2019) (cleaned up) (further citation omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*,

907 F.3d 1086, 1090 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to determine whether it contains sufficient evidence to support the ALJ's conclusion. *Biestek*, 139 S. Ct. at 1154; *Grindley v. Kijakazi*, 9 4th 622, 627 (8th Cir. 2021). When substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089.

## I. THE ALJ'S CONCLUSIONS ABOUT PLAINTIFF'S HEADACHES ARE NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

The ALJ formulated an RFC for Plaintiff that included many limitations, but very few that were linked to her headaches. Plaintiff testified that she had migraine headaches about 6 times per month—an improvement from the recent past because she had returned to taking Botox injections. (Tr. at 65-66.) But when suffering a migraine, according to Plaintiff, she is incapacitated, forced to lay down in a dark room because she becomes very sensitive to light. (Tr. at 67.) The ALJ discounted this testimony, as noted above, based on the view that Plaintiff's "activities of daily living were fairly active as she went on vacations, hunted, exercised multiple times per week, assisted her father with maintenance and remodeling projects around the home, and cared for pets." (Tr. at 31-32.) The ALJ also intimated that Plaintiff's course of treatment and medical records for her headaches were not consistent with the debilitating symptomology she complained of.

The record does not support the ALJ's conclusion that Plaintiff's activities of daily living conflict with her complaints of incapacitating headaches. It is true that Plaintiff indicated she *had* an active lifestyle. In her functional report, Plaintiff listed her hobbies as "[p]laying sports, hunting, fishing, riding horse, riding motorcycle, playing with my dogs, work on cars, home repairs." (Tr. at 282.) But she also clarified that while she enjoys these hobbies, does not do them much anymore because of her impairments. (*Id.; see also* Tr. at 72 (Plaintiff's hearing testimony that she had not ridden a horse in "at least two years").) As for household chores and repairs, Plaintiff testified that she was assisted by others in these tasks. (Tr. at 71-72.) Finally, this Court sees no conflict between having a "fairly active" lifestyle as described by the ALJ and yet having intermittent, debilitating symptoms where Plaintiff cannot function due to the severity of her ailment. That is the episodic nature of Plaintiff's migraines. The ALJ's suggestion that Plaintiff's symptomology was overstated because she was able to periodically engage in some basic life activities is not supported by substantial evidence.

The Court also respectfully disagrees with the ALJ's characterization of Plaintiff's medical records and treatment. Plaintiff consistently treated for her headaches since 2019, reestablishing care with a new provider in 2022 after she relocated. Time and again, her providers noted that Plaintiff's headaches were among her serious ailments. (*See* Tr. at 836 (September 13, 2022 visit); 833 (September 19, 2022 visit); 831 (October 17, 2022 visit); 823 (March 14, 2023 visit); 817-19 (May 24, 2023 visit); 816 (May 25, 2023 telehealth visit); 811-15 (June 14, 2023 occupational therapy visit); 807 (June 14, 2023 physical therapy visit); 800-04 (June 20, 2023 visit specifically for headache evaluation); 795 (July

6, 2023 physical therapy visit); 790 (July 11, 2023 occupational therapy visit); 786 (July 11, 2023 physical therapy visit); 781 (July 18, 2023 physical therapy visit); 778 (July 26, 2023 physical therapy visit); 773 (July 31, 2023 physical therapy visit); 758-59 (August 23, 2023 visit).) During her June 14, 2023 visit, Plaintiff's provider noted that she was "needing increased levels of assistance for [activities of daily living] and use of compensatory strategies to manage symptoms and improve performance." (Tr. at 814.) And during her June 20, 2023 headache evaluative visit, Plaintiff's migraines were happening about 12-16 times per month and were "quite debilitating for her." (Tr. at 800-01.) Plaintiff's provider also noted that she "has trialed multiple pharmacological regimes for attempted migraine prevention. Unfortunately, none of these regiments have been overly effective for her." (Tr. at 803.) This provider suggested initiating Botox injections, which, as Plaintiff testified, she did with some success (that is, lowering the number of debilitating migraines to roughly 6 per month). (Tr. at 803.) This record as a whole cannot support the notion that Plaintiff's medical records or course of treatment are inconsistent with her subjective complaints. It is, in fact, the opposite. The ALJ's contrary conclusion is not supported by substantial evidence, and it was error to not further consider Plaintiff's debilitating migraines in constructing her RFC.

## II. SUBSTANTIAL EVIDENCE IN THE RECORD SUPPORTS THE ABSENCE OF A SERVICE DOG LIMITATION IN PLAINTIFF'S RFC.

Plaintiff also argues that her RFC was not supported by substantial evidence because it did not account for her need to have a service dog with her at work. Although the Court

concluded above that the matter must be remanded, this issue is addressed for the sake of completeness.

It is Plaintiff's burden to establish that her RFC should have included greater limitations than imposed by an ALJ. *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The question before the Court is whether a reasonable mind could accept that no service-dog limitations were necessary on this record. *Biestek*, 139 S. Ct. at 1154.

Here, the Court finds no error. Plaintiff's service dog comes up in the administrative record only sporadically and contextually, that is, with notations that her dog is with her at certain appointments. (*See, e.g.,* Tr. at 733 (July 17, 2023 appointment where Plaintiff is accompanied by service dog); 741-42 (same for August 14, 2023 appointment); 811-12 (same for June 14, 2023 appointment).) None of the state agency medical and psychological consultants found Plaintiff's service dog was medically necessary. (Tr. at 84-99; 101-16.) And in her testimony, Plaintiff only mentioned her service dog in the context of her household responsibilities of caring for pets. (Tr. at 72.) Given the paucity of evidence surrounding Plaintiff's service dog in the record as a whole, it was not error for the ALJ to exclude any service-dog limitation from her RFC.

## ORDER

Based on the above findings, as well as the files, records, and proceedings above, **IT IS ORDERED**:

1. Plaintiff Shannon D.'s Memorandum (Doc. 12) is **GRANTED** as follows:
    a. The decision of the Commissioner denying benefits is **REVERSED**; and

b. This case is **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with this Order.

2. Defendant Commissioner of Social Security's Memorandum (Doc. 14) is **DENIED**.

DATED: August 26, 2026

*s/Douglas L. Micko*
DOUGLAS L. MICKO
United States Magistrate Judge